UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JEFFREY ANDERSON,

                            Plaintiff,                    **COMPLAINT**

    -against-                                         **JURY TRIAL**
                                                                  **DEMANDED**

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, and POLICE OFFICER
LUIS GUTIERREZ, Shield No. 22109, of the
32nd Precinct, in his individual capacity and in        **ECF CASE**
his official capacity as an employee of the
City of New York,

                            Defendants.
------------------------------------------------------------------X

        Plaintiff, Jeffrey Anderson, by his attorney, Kavin L. Edwards, Esq., alleges the following for this Complaint upon information and belief:

## NATURE OF THE ACTION

        1.    This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, for deprivation of Plaintiff' rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, Article 1, Sections 6, 8 and 12 of the New York State Constitution, and laws of the State of New York, against the City of New York, the New York City Police Department, and New York City Police Officer Luis Gutierrez, a police officer of the City of New York, in his individual capacity and official capacity. Plaintiff seeks compensatory and punitive damages, affirmative and equitable relief, an award of attorney's fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION

2. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4). Plaintiff also assert jurisdiction over the City of New York under 28 U.S.C. § 1331 and § 1367.

## VENUE

3. Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York because the events forming the basis of Plaintiff' complaint occurred in that District.

## NOTICE OF CLAIM

4. On March 29, 2012, plaintiff Jeffrey Anderson filed a Notice of Claim upon defendant City of New York, by delivering a copy thereof to the person designated by law as a person to whom such claim may be served.

5. Plaintiff's Notice of Claim was in writing, sworn to by Plaintiff, containing his name and address, and the name and address of his attorney.

6. The Notice of Claim set out the nature of the claims, the time when, the place where, and manner by which the claims arose, and the damages and injuries claimed to have been sustained by Plaintiff.

7. The City of New York has failed to adjust the claims for Plaintiff within the statutory time period.

8. This action is being commenced within one year and ninety days after the happening of the event upon which the claims are based.

## PARTIES

9. Jeffrey Anderson ("Plaintiff Anderson") is a citizen of the United States

and, at all times relevant to the claims arising herein, was a resident of the State of New York.

10. At all times relevant to this complaint, defendant Police Officer Luis Gutierrez ("defendant Gutierrez") was a duly appointed and acting police officer of the New York City Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Police Department.

11. Defendant City of New York is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York, pursuant to Section 431 of its Charter. The City of New York has established and maintains a Police Department as a constituent department or agency of defendant City of New York.

12. At all relevant times, the City of New York and its Police Department employed all of the individual defendants.

13. At all relevant times, all of the individual defendants were agents, servants, and employees of the City of New York acting within the scope of their employment by defendant City of New York and its Police Department.

## FACTS

14. On December 16, 2011, at approximately 1:10 am, Plaintiff Anderson and his friends were walking down 141st Street between 7th and 8th Avenues in Manhattan, New York, on their way to the store to get something to eat.

15. Officers from the New York City Police Department pulled up in a police vehicle, a van, and stopped Plaintiff and his friends.

3

16. The officers exited the vehicle and asked them to get on the wall then they frisked Plaintiff and each of his friends.

17. Two of the four officers walked off and then began looking behind garbage bags and garbage cans.

18. The officers that had walked off pulled out a liquor bottle from beneath the trash and asked Plaintiff and his friends, whose liquor bottle is this?

19. Plaintiff and his friends did not have any liquor bottles.

20. The officers asked Plaintiff and his friends for identification, they gave the officers their identification and they were given summonses.

21. The officers told Plaintiff and his friends that they were being charged with drinking alcohol in public. The officers insisted that the alcohol that was approximately fifteen feet away from Plaintiff and his friends belonged to them.

22. Plaintiff and his friends did not have any alcohol in containers nor did they have any cups on them with alcohol.

23. During the time that the officers stopped Plaintiff and his friends, and before they were given summons, one of the officers, PO-1 or PO-2, directed them to sit on their hands.

24. Plaintiff told the officer, PO-1 or PO-2, that his friend, Jose, has Parkinson's disease and that he should not be sitting on his hands. At the time, the tremors of Plaintiff's friend's hands could clearly be seen, according to Plaintiff.

25. The officer, PO-1 or PO-2, stated that he didn't care what Plaintiff's friend had they needed to sit on their hands. The officers gave Plaintiff and his friends summonses requiring them to go to court regarding the charges.

4

26. Plaintiff was given a summons for carrying an open container of alcohol.

27. After Plaintiff and his friends received summonses from the officers, the officers got back in their vehicle. As Plaintiff and his friends began walking down the street, upset and frustrated by what had just happened, Plaintiff turned to his friend and made a comment about the police.

28. Plaintiff in making his comment about the police to his friend did not use profanity.

29. Plaintiff was upset that they had been stopped, frisked and harassed by the police and given summons, and the officer made his friend, Jose, with Parkinson's disease, sit on his hands. Plaintiff did not say anything to the officers.

30. Immediately after Plaintiff spoke to his friend, one of the officers said, "What did you say?" Next the officers got back out of their vehicle and approached Plaintiff.

31. One of the officers walked up in Plaintiff's face and asked again, "What did you say?" Plaintiff said he was talking to his friend.

32. At this point, the officers told Plaintiff to turn around and placed him under arrest.

33. Upon information and belief, the police officers were verbally abusive to Plaintiff by cursing at him, telling him to shut the F up and that they were going to lock Plaintiff the F up.

34. Plaintiff Anderson transported to the 32nd Precinct in the police van.

35. While at the 32nd Precinct, plaintiff Anderson was placed in a jail cell and held in police custody for over 15 hours.

36. Both of Plaintiff's wrists were injured from the handcuffs that were placed on him by the officer. Plaintiff's ankles were later injured when they were shackled by police officers and he was taken to the hospital for a psychiatric evaluation.

37. Plaintiff was forcefully cuffed, while in the custody of the police, and taken to the hospital by ambulance.

38. Plaintiff's hands and ankles were shackled during the entire time while he was at the hospital, approximately two hours.

39. The injuries to Plaintiff's wrists and ankles lasted for about a month.

40. Plaintiff's wrists were dark and cut, with welts from the metal of the handcuffs being too tight.

41. Plaintiff complained to the police officers about the handcuffs being too tight on the way to the Precinct, but they refused to adjust them until Plaintiff got to the Precinct.

42. Plaintiff Anderson was eventually brought before a judge in the Criminal Court of the City of New York, New York County, and was arraigned, on December 16, 2011, on the complaint charging him with Disorderly Conduct. When Plaintiff got to his arraignment he was told that he was being charged with disorderly conduct for using foul language.

43. Plaintiff was finally released after being in police custody for approximately 15 hours. Plaintiff did not commit any of the offenses that he was charged with or any other offenses.

44. After Plaintiff was finally released from police custody he had to go back to court.

45. The criminal case against Plaintiff in New York County for disorderly conduct under docket number 2011NY091183 was adjourned contemplating dismissal on February 29, 2012.

46. Approximately two days prior to receiving an adjournment contemplating dismissal for the disorderly conduct charge, Plaintiff had to go to court for the summons that the police gave him.

47. Upon information and belief, when Plaintiff went to court for the summons that he received for allegedly drinking in public, his arresting officer began fabricating stories to the judge about what happened on that night.

48. Upon information and belief, after the judge began questioning the officer about the facts, the judge immediately dismissed Plaintiff's case for allegedly drinking in public because the officer's story was different from the police report.

49. As a result of this arrest, and subsequent imprisonment, Plaintiff suffered, debasement and fright of being arrested without cause, being unlawfully imprisoned and prosecuted.

50. From the date of his arrest, December 16, 2011, through the time that Plaintiff had to go to court when his case was ultimately dismissed, February 29, 2012, he felt, anxious, nervous and very afraid that he could be wrongfully convicted when he had done nothing wrong.

51. Plaintiff felt like, if the police could stop, frisk, harass and arrest him when he had not done anything wrong then it was also possible that he could be convicted even though he had not done anything wrong.

52. The allegations in the summons and complaint against plaintiff Anderson falsely alleged that plaintiff Anderson committed the above offenses by carrying an open container of alcohol and engaging in disorderly conduct.

53. Plaintiff Anderson was never in possession of any alcoholic container and never engaged in any disorderly conduct at any time during his encounter with the defendants.

54. Plaintiff Anderson never committed any of the offenses charged against him in the summons or complaint.

55. At no time during the above-described events did plaintiff Anderson commit any unlawful acts or act in a manner to give the defendants reasonable suspicion or probable cause to seize, search, or arrest plaintiff Anderson.

56. Defendant Gutierrez knew that plaintiff Anderson had not committed any unlawful act or any of the offenses charged in the summons or complaint, but maliciously initiated a criminal prosecution against plaintiff Anderson by signing the above-mentioned summons and complaint in which it was falsely alleged that plaintiff Anderson committed the above-described offenses.

57. After plaintiff Anderson was arraigned on the complaint he was released on his on recognizance and ordered to return to court on a later date.

58. In total, plaintiff Anderson was required to return to court on two (2) dates following his arraignment to answer to the charges falsely lodged against him by defendant Gutierrez and the summons.

59. On February 29, 2012, the criminal case against plaintiff Anderson was adjourned in contemplation of dismissal. On August 28, 2012, the criminal case

terminated in plaintiff Anderson's favor when it was automatically dismissed and sealed by operation of the Penal Law of the State of New York.

60.  As a direct and proximate result of the above said acts of the defendants, Plaintiff Anderson suffered the following injuries and damages:

a) Violation of his constitutional rights under the First and Fourteenth Amendments of the United States Constitution, and under Article 1, Section 8 of the New York State Constitution, to exercise his right of free speech;

b) Violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, and under Article 1, Section 12 of the New York State Constitution, to be free from an unreasonable search and seizure of his person;

c) Violation of his constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 6 of the New York State Constitution, to not suffer the deprivation of his liberty without due process of law;

d) Physical injury, pain, and suffering;

e) Emotional trauma, distress, and suffering; and

f) Loss of his physical liberty.

61.  The actions of the individual defendants violated the following clearly established and well-settled constitutional rights of Plaintiff Anderson:

a) The right to freedom of speech;

b) Freedom from the unreasonable search and seizure of his persons;

b)   The right to not suffer deprivation of his liberty without due process of law.

## FIRST CAUSE OF ACTION

62. Paragraphs 1 through 61 of this complaint are incorporated herein by reference as though fully set forth herein.

63. By way of their above-described actions, each of the defendants, acting under color of law, violated Plaintiff' rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

64. Plaintiff claims damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above, caused by the defendants' aforesaid violations of Plaintiff' constitutional rights under color of law.

## SECOND CAUSE OF ACTION

65. Paragraphs 1 through 61 of this complaint are incorporated herein by reference as though fully set forth herein.

66. Defendants falsely arrested and unlawfully imprisoned Plaintiff, or caused Plaintiff to be falsely arrested and unlawfully imprisoned, by way of their above-described actions.

67. Plaintiff claim damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of their false arrest and unlawful imprisonment.

## THIRD CAUSE OF ACTION